**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Diane C. Lopez,                                   )     No. CV 09-01955-PHX-JAT
                                                  )
               Plaintiff,                         )     **ORDER**
                                                  )
vs.                                               )
                                                  )
Michael J. Astrue, Commissioner of Social        )
Security,                                         )
                                                  )
               Defendant.                         )
                                                  )
_____                   )
                                                  )

       Pending before the Court is Plaintiff Diane Lopez's appeal from the Administrative
Law Judge's ("ALJ") denial of Plaintiff's application for Social Security disability benefits.
For the reasons that follow, the Court affirms the ALJ's decision to deny Social Security
disability benefits.

**I.     PROCEDURAL HISTORY**

       On January 12, 1998, Plaintiff filed an Application for Disability Insurance Benefits,
alleging a disability onset date of August 12, 1997.  Record Transcript ("TR") 112.  Plaintiff
asserts that she is disabled due to a combination of physical and psychological impairments,
including fibromyalgia, recurrent pulmonary asthma, shortness of breath, loin pain, joint
pain, irritable bowel syndrome, anemia, chronic obstructive pulmonary disease ("COPD"),
anxiety, and the limiting effects of medication usage.  (Doc. # 22 at p. 2.)  The Social

Security Administration ("SSA") denied Plaintiff's application, and found that Plaintiff was capable of performing her past work as a receptionist.  TR 24, 34.  On March 1, 2002, the District Court remanded for further proceedings.  TR 494–501.  Additional hearings before the SSA were held, and on November 24, 2003, the ALJ issued a decision finding Plaintiff disabled as of February 2000 to August 9, 2001.  TR 475–88.  After Plaintiff's request for review by the SSA Appeals Counsel was denied, TR 973–76, Plaintiff commenced a second action before the District Court.  On March 16, 2006, the District Court remanded the matter to the ALJ for further proceedings.  TR 983–96.

On April 24, 2007, a hearing before the SSA was held, TR 1239–72, and on July 18, 2007, the ALJ issued a decision denying Plaintiff's application for benefits, TR 890–901.  Plaintiff's request for review filed with the SSA Appeals Council was denied.  TR 876–78.

Pending before the Court is Plaintiff's appeal filed on September 18, 2009, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.  (Doc. # 1.)

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Disability Claim

Plaintiff claims that she has been unable to work since August 12, 1997.  (Doc. # 22 at pp. 1–2.).  She alleges that she is disabled due to the following severe impairments considered by the ALJ: COPD, asthma, fibromyalgia, shoulder pain, obesity, thyroid cyst, and glaucoma, TR 896, as well as the following other impairments: recurrent pneumonia, loin pain, joint pain, irritable bowel syndrome, reflux, medication side effects, and depression and mood disorder, (Doc. # 22 at pp. 49, 54).

### B.   Plaintiff's Background

Plaintiff was born on September 5, 1951, stands at 5 feet, 6 inches tall, and weighs 200 pounds.  TR 1243, 1259.  She lives alone in an apartment.  TR 1254–56.  She received her GED, and went to Central Arizona Community College for a few months.  TR 1242–43.  Plaintiff worked as a clerk typist (receptionist), as a cashier in a variety of retail establishments, and in factories assembling products, such as fireworks, flares and plastics.

TR 1243–48.  Until approximately August 1997, Plaintiff smoked half of a pack of cigarettes each day for 25 years.  TR 170, 194, 388.

On April 24, 2007, Plaintiff testified to the ALJ regarding her alleged disabling conditions. TR 1249–61. Plaintiff testified that she takes seven prescription drugs, including Theophylline, Accolate, Advair Discus, Hydrocodone, Reglan, and Baclofen.  TR 1249. Plaintiff testified that she takes Hydrocodone for pain in her muscles, bones, joints, knees, shoulders, head and neck.  TR 1250.  Plaintiff also testified that she has irritable bowel syndrome for which she takes Reglan, and has bouts of diarrhea and constipation every two to three days. TR 1251, 1261. Plaintiff testified that she has a nodule on her thyroid, which is being monitored.  TR 1251.  She also testified that she has asthma and COPD, and fibromyalgia. TR 1251, 1261. Plaintiff testified that she has arthritis in her shoulders, which makes it difficult for her to lift her arms over her head.  TR 1252.  Plaintiff testified that she has depression and anxiety. TR 1252–53. Plaintiff testified that she took injections for her back pain for about a year, which helped to relieve the pain. TR 1258. Plaintiff also testified that her inhalers make her "jittery" and lightheaded.  TR 1261.  Plaintiff testified that, since 1997, she has used an SVN machine three to five times per week when her inhaler does not stop her wheezing.  TR 1256–57.  Plaintiff testified that it takes her approximately 20 minutes to set up, use, and clean the SVN machine.  TR 1257.  Finally, Plaintiff testified that her weight makes it hard to move around and breath.  TR 1259–60.

According to Plaintiff, she can only stand for 10 to 15 minutes before she needs to sit due to pain in her legs, and she has a difficult time sitting for more than 45 minutes.  TR 1260.  Plaintiff testified that she needs to rest during the day for two to four hours, and that she has difficulty sleeping at night. TR 1260–61. Plaintiff testified that she dresses herself, performs light cleaning, runs errands, has a driver's license, and occasionally goes to church. TR 1254–55.  In her free time, Plaintiff likes to read, watch television, and spend time with her grandchildren. TR 1254. However, Plaintiff testified that she is unable to read more than 45 minutes, because she gets headaches due to her glaucoma.  TR 1257.  Plaintiff also started

physical therapy in February 2007 where she rides a stationary bike and performs stretches and exercises.  TR 1256.

### C.   Record Evidence

#### 1.   Physical and Mental Impairments

On August 15, 1997, Plaintiff was admitted to Casa Grande Regional Medical Center for ten days due to pneumonia and reactive airway disease.  The discharging prognosis was "[g]ood, although she will need follow-up."  TR 167.  The treating physician noted that Plaintiff would need to be off work through September 13, 1997.  TR 192.  On August 30, 1997, Plaintiff was again admitted to Casa Grande Regional Medical Center for nine days where she was found to have borderline pancreatitis, and required an outpatient gastrointestinal work-up.  TR 194.  Her treating physician, Dr. Douglas Parkin, noted that she "obviously" did not have acute abdominal pain, because her grandchildren were sitting on her lap and stomach.  TR 198.  Dr. Parkin noted that Plaintiff could return to work on September 21, 1997.  TR 319.

On October 2, 1997, a colonoscopy was performed on Plaintiff, and the results were normal.  Plaintiff was diagnosed with irritable bowel syndrome and prescribed medication. TR 239–40.  On October 20, 1997, Dr. Parkin noted that Plaintiff was supposed to return to work in nine days, but with her asthma, that return date was doubtful.[1]  TR 298.  On November 13, 1997, an asthma specialist treating Plaintiff stated that she was doing fairly well, but that her arthritis medications can trigger her asthma.  TR 246.

On an April 28, 1998 medical leave assessment, Dr. Parkin noted that Plaintiff could possibly be disabled for life, and that it was unlikely that she would return to work so long as she was so severely short of breath.  TR 274–76.  On May 28, 1997, Dr. Parkin noted Plaintiff's physical limitations due to her breathing issues, and stated that she was not released to return to work.  However, Dr. Parkin did not complete the form with respect to

---

[1] Plaintiff takes this notation in her medical records out of context by stating that "[t]he doctor doubts an ability to return to work."  (Doc. # 22 at p. 5.)

1   Plaintiff's potential to return to work.  TR 440.  On June 4, 1998, Dr. Parkin completed

2   another medical assessment, and stated that due to a diagnosis of pneumonia, Plaintiff was

3   wheezing and unsteady on her feet, and could not lift 10 or more pounds occasionally or

4   stand or walk for more than 15 minutes.  TR 323.

5        In June 1998, Plaintiff was diagnosed with anemia and a thyroid cyst.  TR 374,

6   388–90.

7        On July 29, 1998, pulmonary consulting examiner, Dr. Larry Spratling, stated that

8   Plaintiff could return to her clerical occupation "in the near future" with the intensification

9   of her medical treatment in the manner discussed in his report.  TR 260.  This is confirmed

10   by Dr. James F. Stagg, in a report dated July 30, 1998, in which Dr. Stagg stated that Plaintiff

11   could return to light work.  TR 262–69.  Dr. Parkin disagreed, and noted that Plaintiff was

12   "unemployable" due to her COPD.  TR 271.

13        On August 26, 1998, Plaintiff was examined by a psychiatrist, Dr. Carlos J. Vega.  Dr.

14   Vega diagnosed Plaintiff with adjustment disorder with mixed emotional features, including

15   anxiety and depression.  TR 324–27.

16        On November 18, 1998, Dr. Parkin completed a medical assessment and opined that

17   Plaintiff can sit one hour, stand and walk less than one hour, lift and carry less than five

18   pounds, and cannot use her hands for repetitive actions.  TR 340–41.

19        On April 4, 1999, Plaintiff was hospitalized for nine days for loin pain, renal colic,

20   and longstanding asthma.  TR 456–57.

21        On February 8, 2000, Plaintiff was treated at Barrow Neurological Group for ongoing

22   problems with pain.  The treating physician found that she had evidence of an incipient

23   cervical myelopathy and tension headaches, with a minor essential tremor.  TR 577–78.

24        From 2000 to 2001, Plaintiff obtained counseling twice a month for adjustment

25   disorder with anxiety and depression.  TR 614, 624–25, 726.  It was noted that her husband

26   died the prior year after a brief marriage.  TR 614.

27

28

1    During a follow-up examination on August 18, 2000, Dr. Parkin noted that Plaintiff

2  "is doing much better" and that "her asthma is under excellent control" on medication.  TR

3  633.

4    On July 30, August 6 and August 13, 2001, Plaintiff received injections to relieve her

5  chronic myofascial pain, and was pleased with the results.  TR 695–96.  The treating pain

6  specialist recommended a six-injection schedule.  TR 692.  These treatments continued

7  through April 2002.  TR 673–701.

8    On January 21, 2002, Plaintiff was admitted to Casa Grande Regional Medical Center

9  for one week.  She was diagnosed with pneumonia, COPD, dehydration, and acute sinusitis.

10  TR 704.

11    On June 4, 2002, an MRI of Plaintiff's right shoulder showed evidence of a partial

12  thickness tear and small joint effusion.  TR 787.  On October 9, 2002, Plaintiff underwent

13  surgery, on an outpatient basis, to repair a partial rotator cuff tear in her right shoulder.  TR

14  730–31.

15    On January 13 and February 25, 2003, Plaintiff was treated by Dr. Parkin for

16  fibromyalgia flare-ups.  TR 1177, 1179.  Then on March 19, 2003, Plaintiff was treated by

17  Dr. Parkin for unbearable pain she experienced during the prior month.  She continued to

18  take pain medication for her fibromyalgia.  TR 1175.  On March 31, 2003, Dr. Parkin

19  continued to treat Plaintiff and noted that she "is now doing much better."  TR 1174.  On

20  May 7, 2003, she is treated by Dr. Parkin for bronchitis, fibromyalgia and glaucoma.  Dr.

21  Parkin stated that "she has improved."  TR 1172.  On July 9, 2003, Plaintiff was seen by Dr.

22  Parkin for a follow-up exam.  She reported that "overall she is doing well."  Dr. Parkin noted

23  that her fibromyalgia was "well controlled."  TR 1170.  From 2003 through 2004, Plaintiff

24  continued to be treated by Dr. Parkin for her fibromyalgia.  TR 1148–65.

25    On September 15, 2003, and April 13 and May 2, 2005, Plaintiff was treated at the

26  Southwestern Eye Center for chronic open-angle glaucoma.  TR 1133, 1230, 1232.  The

27  treating doctor assured Plaintiff that both of her eyes appeared clinically stable.  TR 1231.

28  A topical medication was prescribed to reduce the pressure.  TR 1230.

On February 17, 2005, Plaintiff was diagnosed with gastroesophageal reflux disease (GERD), which was treated with Prevacid.  TR 1136.

On March 25, 2005, Plaintiff obtained an ultrasound of her thyroid, which revealed nodules in the right and left lobes of the thyroid gland.  TR 1209.

In November 2005, Plaintiff was treated by Dr. Parkin for pneumonia, which was resolved on November 30, 2005.  TR 1107–18.  Also in November 2005, Plaintiff was injured in a car accident that resulted in neck pain.  She was given a cervical collar, but stopped wearing it.  TR 1104–10.

In 2006 and 2007, Plaintiff continued to be treated by Dr. Parkin for, among other ailments, allergic rhinitis, asthma, GERD, irritable bowel syndrome, acute bronchitis, right knee pain, fibromyalgia and joint pain.  TR 1044–61, 1070–77, 1080–89, 1090–93, 1097–1100.  During these visits, Plaintiff appeared well developed, well nourished, well hydrated, healthy and in no acute distress.  On June 26, 2006, Dr. Parkin treated Plaintiff for lower back pain.  TR 1078–79.  On October 26, 2006, Plaintiff was treated by Dr. Parkin for abdominal cramps, heartburn related to fatty foods, nausea and vomiting.  Dr. Parkin advised Plaintiff to walk to relieve the abdominal cramps.  TR 1068–69.  On November 7, 2006, Dr. Parkin's assessment of Plaintiff described obesity, osteoarthritis and acute meniscal tear of the right knee, restless leg syndrome, and sciatica.  Dr. Parkin's notes indicate that Plaintiff had prescriptions for 15 medications.  TR 1065–67.

### 2. Recent Medical Assessments

On November 24, 2006, at the request of the SSA, Plaintiff was examined by Dr. Richard Palmer for an internal medicine consultation, medical record review, medical assessment and spirometry testing.  TR 1029–41.  Dr. Palmer's impression of Plaintiff was asthma, COPD, fibromyalgia with associated widespread pain, fatigue, headaches and insomnia, and symptoms of irritable bowel syndrome, untreated anxiety and depression, mild impingement of the right shoulder with a distant history of tendinopathy, post-surgical arthropathy of the right knee, hypothyroidism, and recurrent sinusitis.  TR 1033.  According to his medical assessment, Dr. Palmer found that Plaintiff can occasionally lift 20 pounds,

frequently lift 10 pounds, sit about six hours and stand or walk five hours in an eight-hour workday, has limited ability to reach in all directions, is limited by temperature extremes, dust and humidity, hazards such as machinery and heights, and fumes, odors, chemicals and gases.  TR 1035–38.

On November 26, 2006, Plaintiff was examined by Dr. David Young, a licensed psychologist, at the request of the SSA.  TR 1015–28.  Dr. Young's assessment of Plaintiff was adjustment disorder with mixed anxiety and depressed mood.  TR 1021.  Dr. Young noted that Plaintiff had low average to average memory function, but that emotionally, she was functioning quite comfortably.  TR 1021–22.  Dr. Young found that Plaintiff was self-sufficient, active within her apartment, and able to travel about the community and attend appointments without difficulty.  TR 1022.

On December 13, 2006, Plaintiff's treating physician, Dr. Parkin completed a medical assessment.  TR 1042–43.  In Dr. Parkin's opinion, Plaintiff's impairments prevent her from performing work eight hours per day, five days per week on a regular and consistent basis. TR 1042.  Dr. Parkin noted that Plaintiff can sit between one and two hours, lift between 10 and 20 pounds, stand less than one hour, carry less than 10 pounds, and walk less than one hour in an eight-hour workday.  TR 1042.  Dr. Parkin rated Plaintiff's limitations as "moderately severe."  TR 1043.

### 3.    Vocational Expert

During the April 27, 2007 hearing before the SSA, the Vocational Expert ("VE") testified to Plaintiff's past work history and potential for future employment.  TR 1262–71. The VE initially described Plaintiff's past work as a receptionist (sedentary and semi-skilled), a cashier (light and unskilled), and as an assembler (light[2] and unskilled).  TR 1263.

The ALJ's first hypothetical concerned a woman of Plaintiff's age (55 years), education (at least 12 years of education with a GED), and same work experience.  TR 1263.

---

[2] Plaintiff described her work as an assembler as "medium."  However, the Dictionary of Occupational Titles defines it as "light."  TR 1263.

1    This hypothetical person is limited to lifting 10 pounds on a frequent basis and 20 pounds on

2    an occasional basis, and requires a "sit and stand option at will" at a minimum of one hour

3    intervals, as necessary.  TR 1263.  Due to shoulder problems, this hypothetical person should

4    avoid working at or above shoulder heights.  TR 1264.  This hypothetical person is not very

5    strong, and should avoid working at unprotected heights or near hazardous moving

6    machinery.  TR 1264.  This hypothetical person has COPD, and perhaps asthma, and should

7    avoid working where there are excessive amounts of dust, fumes, gases, and chemicals.  TR

8    1264.  This hypothetical person has pain in various parts of her body and in all of her joints.

9    TR 1264.  She has pain in her head, neck, back, shoulders, arms, legs, and stomach, and she

10   suffers from irritable bowel syndrome.  TR 1264.  This hypothetical person has pain of a

11   slight nature, which slightly affects her ability to do basic work activities, or her pain is a

12   condition that is or could be controlled by appropriate medication without any significant

13   adverse side effects.  TR 1264.  This hypothetical person also has other problems, previously

14   covered by other factors in this hypothetical, such as fibromyalgia, obesity, thyroid cyst,

15   some fatigue, and glaucoma; all of which have a slight effect on the ability to do basic work

16   activities or can be controlled by appropriate medication without significant side effects.  TR

17   1264.  Finally, this hypothetical person has some psychiatric problems in the form of

18   depression, anxiety, and adjustment disorder, which are all of a slight nature and have a

19   slightly adverse effect on her ability to do basic work activities, or can be controlled by

20   appropriate medications without significant adverse side effects.  TR 1264–65.

21          The VE found that this hypothetical person could perform Plaintiff's past work as a

22   receptionist.  TR 1265.  Plaintiff's other past work would not be appropriate primarily due

23   to the "sit/stand at will" requirement.  TR 1265.

24          The ALJ then posed a second hypothetical to the VE in which the factors discussed

25   above remain the same, except with respect to the pain level.  TR 1265.  In the second

26   hypothetical, this hypothetical person's pain is of a moderate nature and has a moderate

27   effect on her ability to do basic work activity, and can be controlled by appropriate

28   medications without significant adverse side effects.  TR 1265.  Again, the VE found this

hypothetical person could perform Plaintiff's past work as a receptionist, but not the work of a cashier or assembler.  TR 1265.

In a third hypothetical, the ALJ stated that all the factors discussed in the first hypothetical remain the same, except with respect to the pain level.  This hypothetical person's pain is of a severe nature, such that no amount of medication would help to alleviate the pain without significant adverse side effects.  TR 1266.  In this instance, the VE found this hypothetical person could not perform any of Plaintiff's past work.  TR 1266.  The VE further stated that there is no other work in the national economy that this hypothetical person would be capable of performing.  TR 1266.

The VE described "slight or mild" as indicating that a person would have trouble performing a function, but could do it by trying harder than a person without such difficulties.  TR 1266.  "Moderate" means that more than 50 percent of the time the person could perform the function; whereas, "severe" means a person could perform the function less than 50 percent of the time.  TR 1266.

The ALJ directed the VE to a medical assessment performed by Dr. Parkin on December 13, 2006.  TR 1267.  This medical assessment states that in an eight-hour day, Plaintiff can sit between one and two hours, stand less than one hour, and walk less than one hour. TR 1042–43.  The ALJ posed a fourth hypothetical, in which all the factors discussed in the first hypothetical remain the same, except with respect to the limitations set forth in Dr. Parkin's medical assessment.  TR 1267.  The VE stated that this hypothetical person could not perform any of Plaintiff's past work due to the sitting, standing and walking restrictions in the medical assessment.  TR 1267.  The VE further testified that this hypothetical person was not capable of performing any other kind of work in the national economy.  TR 1267–68.

Plaintiff's counsel proposed hypotheticals five and six.  Hypothetical person five could only complete a task in a timely manner 20 to 30 percent of the time.  TR 1268.  Hypothetical person six assumes the restrictions based on Plaintiff's testimony.  TR 1268.

1  The VE testified that both of these hypothetical persons would be unable to perform any of
2  Plaintiff's past work.  TR 1268.

3      Plaintiff's counsel presented the VE with a seventh hypothetical in which the
4  hypothetical person suffered from irritable bowel syndrome and was required to leave her
5  work station one to two times per week with little or no notice.  TR 1268–69.  The VE stated
6  that this factor would not by itself preclude this hypothetical person from working as a
7  receptionist.  TR 1269.  In an eighth hypothetical, Plaintiff's counsel described a person who
8  was required to use an SVN machine one to two times a week during an unscheduled time
9  for 30 minutes or more.  TR 1270.  The VE testified that this hypothetical person could not
10  perform the Plaintiff's past work as a receptionist.  TR 1270.  Plaintiff's counsel also
11  described a person required to take 15 to 20 minute breaks every hour.  TR 1270.  The VE
12  testified that this hypothetical person would not be able to perform the work of a receptionist.
13  TR 1270.

14      Plaintiff's counsel then described a hypothetical person who could lift and carry less
15  than 10 pounds occasionally, could stand or walk for 15 minutes, but would become dyspneic
16  with exertion, and could only sit for 30 minutes at a time.  TR 1270.  The VE testified that
17  this hypothetical person could not perform the functions of a receptionist.  TR 1271.
18  Plaintiff's counsel extended this hypothetical to include the following factors: frequent
19  episodes of difficulty breathing, edginess and fearfulness, SVN treatments, and difficulty
20  walking.  TR 1271.  The VE stated that this hypothetical person could not perform the
21  functions of a receptionist.  TR 1271.

22      Plaintiff's counsel described a final hypothetical in which this hypothetical person
23  could stand or walk less than three hours, sit less than three hours, and lift and carry less than
24  five pounds in an eight-hour workday.  TR 1271.  The VE testified that this hypothetical
25  person could not perform any of Plaintiff's past work.  TR 1271.  The VE further testified
26  that this hypothetical person could not perform any other work in the national economy.  TR
27  1271.

28

### III.    THE ALJ'S DECISION

The ALJ evaluated Plaintiff's alleged disability according to the five-step evaluation process set forth in 20 C.F.R. § 416.920.  TR 890–901.  As an initial matter, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability.  TR 895.  Next, the ALJ found Plaintiff suffered from the following severe impairments: COPD, asthma, fibromyalgia, shoulder pain, obesity, thyroid cyst, and glaucoma.  TR 896–97.  However, the ALJ concluded that Plaintiff's impairments failed to meet the criteria of the third step.  TR 897.  This step requires that a claimant's impairment or combination of impairments "meets or equals one of the SSA's listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement."  20 C.F.R. § 416.920(a)(4)(iii).  The ALJ found that "[n]one of [Plaintiff]'s impairments individually or in combination were accompanied by the signs and symptoms of the severity required in the Listing of Impairments."  TR 897.  The ALJ determined that most of Plaintiff's impairments have slight or moderate effect on her ability to perform basic work activities; however, her impairments can be controlled by appropriate medication without any significant adverse side effects.  TR 897–98.

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work.  TR 897.  The RFC is defined as "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).  Before determining the RFC, the ALJ dismissed Plaintiff's testimony regarding her symptoms and pain level as in conflict with the objective medical findings, and inferred that Plaintiff "has maintained a somewhat normal level of daily activity and interaction."  TR 899.

The ALJ gave some weight to Dr. Parkin, the treating internist, but found oddities in his assessments that lessened his credibility.  TR 900–01.  The ALJ gave substantial weight to the opinions of the treating pulmonologist, the treating rheumatologists and neurologist, the consultative examining physician, and the non-examining State agency physicians.  TR 900–01.  The ALJ determined that Plaintiff was capable of lifting/carrying 10 pounds frequently, and 20 pounds occasionally, but required a sit/stand option at will.  TR 897.

In this case, the ALJ concluded, at step four of the sequential process, that Plaintiff was not disabled. Based on the RFC and the testimony of the VE, the ALJ found that Plaintiff is capable of performing her past work as a receptionist, as such work was actually and generally performed. TR 901. Accordingly, the ALJ held that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. TR 901.

## IV.   STANDARD OF REVIEW

A district court

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation omitted). This standard of review exists, because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Also under this standard, the Court will uphold the ALJ's findings "if supported by inferences reasonably drawn from the record." *Batson v. Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and "may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbings v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

## V.   LEGAL STANDARD

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that she is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (describing the sequential process). A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.[3]

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities means the "abilities and aptitudes to do most jobs," for example: (1) walking; standing, lifting, carrying, and reaching; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervisors, co-workers and usual work situations; and (6) dealing with changes in routine. *Id.* § 404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de

---

[3] Here, Plaintiff does not challenge the ALJ's finding that Plaintiff did not engage in substantial gainful activity during the period of January 13, 1978 through June 30, 2002. TR 895.

1    minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273,

2    1290 (9th Cir. 1996).  If the claimant does not have a severe impairment, the claimant is not

3    disabled.

4         3.    Having found a severe impairment, the ALJ next determines whether the

5    impairment "meets or equals" one of the impairments listed in the regulations.  20 C.F.R. §

6    404.1520(a)(4)(iii).  If so, the claimant is found disabled without considering the claimant's

7    age, education, and work experience.  *Id.* § 404.1520(d).  If the impairment or impairments

8    do not meet or equal a listed impairment, before proceeding to the next step, the ALJ will

9    make a finding regarding the claimant's "residual functional capacity based on all the

10   relevant medical and other evidence in [the] record."  *Id.* § 404.1520(e).  A claimant's

11   "residual functional capacity" is the most she can do despite all her impairments, including

12   those that are not severe, and any related symptoms.  *Id.* § 404.1545(a)(1–2).

13        4.    At step four, the ALJ determines whether, despite the impairments, the

14   claimant can still perform "past relevant work."  *Id.* § 404.1520(a)(4)(iv).  To make this

15   determination, the ALJ compares its "residual functional capacity assessment . . . with the

16   physical and mental demands of [the claimant's] past relevant work."  *Id.* § 404.1520(f).  If

17   the claimant can still perform the kind of work she previously did, the claimant is not

18   disabled.  Otherwise, the ALJ proceeds to the final step.

19        5.    At the final step, the ALJ determines whether the claimant "can make an

20   adjustment to other work" that exists in the national economy.  *Id.* § 404.1520(a)(4)(v).  In

21   making this determination, the ALJ considers the claimant's residual functional capacity,

22   together with vocational factors (age, education, and work experience).  *Id.* § 404.1520(g)(1).

23   If the claimant can make an adjustment to other work, then she is not disabled.  If the

24   claimant cannot perform other work, she will be found disabled.  As previously noted, the

25   Commissioner has the burden of proving the claimant can perform other substantial gainful

26   work that exists in the national economy.  *Reddick*, 157 F.3d at 721.

27

28

1    **VI.    ANALYSIS**

2          On appeal, Plaintiff argues that the ALJ committed legal errors in assessing steps two,

3    three and four of the sequential process.  Plaintiff first argues that the ALJ erred by not fully

4    discussing the basis for excluding certain impairments from its finding of severe

5    impairments.    Plaintiff  also  argues  that  the  ALJ  failed  to  provide  a  reason  for  its

6    determination at step three of the sequential process.  Plaintiff finally argues that the ALJ

7    erred in not properly considering Plaintiff's subjective complaints, the opinions of Plaintiff's

8    treating physician, and the third party report submitted by Plaintiff's daughter.  The Court

9    finds that the ALJ's decision is supported by the weight of substantial evidence, and affirms

10   the ALJ's denial of benefits.

11         Throughout her brief, Plaintiff relies upon prior District Court analysis to support her

12   request for remand.  (Doc. # 22 at pp. 51–53, 63–65.)  As stated above, the Court will set

13   aside a denial of disability benefits only if the denial is not supported by substantial evidence

14   or if the denial is based on legal error.  The Court is not persuaded to adopt prior District

15   Court decisions reviewing prior ALJ decisions.  The Court will review this appeal based on

16   the entire record before it, including the ALJ's current decision, TR 890–901, and apply the

17   applicable legal standards.

18         **A.    Consideration of Combination of Impairments in Step 2 Analysis**

19         Plaintiff argues that the ALJ erred at step two of the sequential process by failing to

20   account for several impairments noted in the District Court's March 2006 decision.  TR

21   983–96.  The Court finds that the ALJ properly determined which of Plaintiff's numerous

22   impairments constituted "severe impairments" for purposes of the Social Security benefit

23   determination.  A severe impairment "significantly limits [Plaintiff's] physical or mental

24   ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The ALJ found Plaintiff had

25   the following severe impairments: COPD, asthma, fibromyalgia, shoulder pain, obesity,

26   thyroid cyst, and glaucoma. TR 896.  An impairment or combination of impairments is "not

27   severe" when medical evidence establishes only a slight abnormality or combination of slight

28

abnormalities, which would have no more than a minimal effect on an individual's ability to work.  *Smolen*, 80 F.3d at 1290.

Plaintiff argues that the ALJ erred in finding Plaintiff's adjustment disorder non-severe for the requisite duration.  (Doc. # 22 at p. 54.)  The ALJ clearly states that Plaintiff's depression, anxiety and adjustment disorder "caused at most slight symptoms on a sustained basis" and that "there was no showing of any significant, documented nonexertional limitations associated with such conditions."  TR 896–97.  The ALJ discussed several exhibits in the record that support its finding, including discharge records in August 2001 indicating that Plaintiff requires no further counseling.  TR 897.  Relying on Dr. Young's assessment, TR 1015–28, the ALJ found that Plaintiff had average intellectual functioning and would have no significant psychological symptoms for a period of 12 or more months.  TR 897.  Accordingly, the Court upholds the ALJ's finding that Plaintiff's psychological issues are not severe impairments of the requisite duration, because the ALJ's decision is supported by inferences reasonably drawn from the record.  *See Batson*, 359 F.3d at 1193.

The ALJ considered the evidence in the record regarding Plaintiff's reactive airway disease and pneumonia, but did not find either of these conditions to be severe impairments.  TR 896.  The ALJ stated that Plaintiff was prescribed medication and was monitored carefully until her condition was under control.  TR 896.

The ALJ relied on the opinions of Plaintiff's various physicians, none of whom indicated Plaintiff's anemia was a severe impairment.  Plaintiff has not cited to any evidence in the record indicating otherwise.

The ALJ considered Plaintiff's history of irritable bowel syndrome, but did not find this impairment to be severe.  TR 896.

Additionally, nothing in Plaintiff's medical records indicates that Plaintiff's hematuria (blood in urine) in April 1999 caused limitations on her ability to work.  In fact, Dr. Parkin does not include this impairment in his diagnosis, even though hematuria was one of Plaintiff's chief complaints.  TR 458–59.

1    Finally, the ALJ found that Plaintiff's impairments could be controlled by appropriate
2    medication without any significant adverse side effects.  TR 896.  The ALJ noted that in
3    November 2006, Plaintiff reports that she has "no noticeable medication side effects."  TR
4    896.

5    The ALJ determined that Plaintiff suffered from some severe impairments, and that
6    she had *some* work-related restrictions.  The ALJ reported that "[t]he persuasive evidence of
7    record reflects a mild restriction of activities of daily living, mild difficulties in maintaining
8    social functioning, and mild difficulties in maintaining concentration, persistence or pace."
9    TR 897.  Based on a review of the record, the Court finds that there is substantial evidence
10   to support the ALJ's determination that only some of Plaintiff's reported impairments are
11   severe.  *See Matney*, 981 F.2d at 1019.

12   Further, any alleged error in failing to deem the recurrent pneumonia, reactive airway
13   disease, irritable bowel syndrom, hematuria, or medication side effects at step two of the
14   analysis was harmless.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (stating that
15   an ALJ commits harmless error at most if he neglects to list an impairment at step two but
16   proceeds to analyze the impairment's effects in his subsequent analysis).  Here, as in *Lewis*,
17   Plaintiff argues that the ALJ erred in failing to find certain impairments as severe at step two
18   of the analysis; however, the ALJ considered the impact of these impairments in step four
19   of its analysis.

20   **B.    Impairments Meeting Criteria in Step 3 Analysis**

21   Plaintiff argues that the ALJ erred in finding that none of Plaintiff's impairments,
22   individually or in combination, met or equaled the criteria for presumptive disability listed
23   in the Social Security regulations.  Plaintiff argues that the medical evidence shows that her
24   impairments meet Listing 12.04 for a period greater than 12 months, and/or meet or equal
25   Listing 3.03 based on her pulmonary disorder.  (Doc. # 22 at p. 56.)

26   In order for a claimant's impairment or combination of impairments to meet the
27   requirements of a listing, all of the criteria of that listing and the duration requirement must
28   be satisfied.  *See* 20 C.F.R. §§ 404.1525(c)(1–3); 416.925(c)(1–3); *see also* Soc. Sec. Rul.

1  83-19, 1983 WL 31248, at *2 ("An impairment 'meets' a listed condition in the Listing of

2  Impairments only when it manifests the specific findings described in the set of medical

3  criteria for that listed impairment."). A claimant bears the burden of proving that she has an

4  impairment that meets or equals the criteria of a listed impairment. *See Burch v. Barnhart*,

5  400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects

6  of a claimant's impairments or compare them to any listing in an equivalency determination,

7  unless the claimant presents evidence in an effort to establish equivalence."); *see also Lewis*

8  *v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

9          The Court finds that there is substantial evidence to support the ALJ's finding that

10  Plaintiff is not *per se* disabled. *See* 20 C.F.R. § 404.1525. Although not specifically

11  discussed in section 4 of its decision, the ALJ's decision as a whole sets forth its finding that

12  Plaintiff's impairments did not meet or equal one of the listed impairments in the Social

13  Security regulations.

14          Listed Impairment 12.04 concerns affective disorders, which are characterized by a

15  disturbance of mood, accompanied by a full or partial manic or depressive syndrome that

16  colors the whole psychic life. 20 C.F.R. Pt. 404, Subpt. P, App'x 1. The ALJ's decision

17  states that Plaintiff's adjustment disorder "caused at most slight symptoms on a sustained

18  basis." TR 896–97. A review of the record, including the exhibits cited by the ALJ, support

19  the ALJ's conclusion that Plaintiff's adjustment disorder and related impairments were not

20  severe enough to meet the requirements in 12.04(A) and (B) or 12.04(C).

21          Listed Impairment 3.03 concerns asthma attacks. 20 C.F.R. Pt. 404, Subpt. P, App'x

22  1. The ALJ found, and Plaintiff's medical records support, that Plaintiff did not suffer from

23  asthma attacks requiring physician intervention at least every two months or at least six times

24  a year. Plaintiff cites to her hospitalizations for pneumonia as support for a finding that she

25  is *per se* disabled under this listing. The Court disagrees. Plaintiff misconstrues her

26  hospitalization records. Plaintiff was not hospitalized for asthma attacks. The ALJ correctly

27  found that Plaintiff did not suffer from a listed impairment relating to her asthma.

28

1   The Court finds that Plaintiff has not met her burden of proving that she has an
2   impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the
3   Social Security regulations. *Burch*, 400 F.3d at 683. Accordingly, the Court finds the ALJ
4   properly declined to find that Plaintiff's impairments met or equaled a listed impairment
5   establishing a *per se* disability.

6   ### C.   Consideration of Subjective Pain Testimony in Step 4 Analysis

7   Plaintiff's next argument is that the ALJ failed to properly consider Plaintiff's
8   subjective complaints. The ALJ concluded "that the [Plaintiff]'s testimony with regard to
9   the severity and functional consequences of her symptoms is not fully credible." TR 899.
10  If a claimant produces objective medical evidence of an underlying impairment, as Plaintiff
11  did here, then the ALJ cannot reject the claimant's subjective complaints based solely on a
12  lack of objective medical support for the alleged severity of the pain. *Rollins v. Massanari*,
13  261 F.3d 853, 856 (9th Cir. 2001). If the ALJ finds the claimant's subjective pain testimony
14  not credible, the ALJ must make findings sufficiently specific to allow the reviewing court
15  to conclude that the ALJ rejected the testimony on permissible grounds and did not arbitrarily
16  discredit the claimant's testimony. *Id.* at 856–57. If no affirmative evidence of malingering
17  exists, then the ALJ must provide clear and convincing reasons for rejecting the claimant's
18  testimony about the severity of her symptoms. *Id.* at 857.

19  The Court concludes that the ALJ provided clear and convincing reasons for not fully
20  crediting Plaintiff's testimony. The ALJ found Plaintiff's medical records, in general,
21  indicate control or improvement of her symptoms with treatment, which seems quite
22  disproportionate to the severity of the pain alleged by Plaintiff. TR 899. The ALJ stated that
23  there are references in the medical records indicating Plaintiff was not in full compliance
24  with the medical regimen specified by her physicians, and such non-compliance does not
25  support Plaintiff's alleged complaints of pain intensity and duration. TR 899. The ALJ also
26  pointed out that Plaintiff's claims of chronic pain and breathing difficulty were undermined
27  by her own testimony about her daily activities, which include living alone, cooking,
28  shopping, light cleaning, reading, watching television, driving an automobile, visiting her

1  friends and relatives, caring for her grandchildren, and dressing and grooming herself.  TR

2  899.

3          Plaintiff's testimony was somewhat equivocal about how she cannot do the things she

4  once did and that she is in constant pain; therefore, the ALJ's interpretation of Plaintiff's

5  testimony may not be the only possible interpretation.  Nevertheless, the ALJ's interpretation

6  is reasonable and supported by substantial evidence.  It is not the Court's role to second

7  guess the ALJ's fact findings.  *See Rollings*, 261 F.3d at 857.

8          The ALJ also compared the common side effects of prolonged or chronic pain: weight

9  loss and diffuse atrophy (muscle wasting), with Plaintiff's medical records.  The ALJ found

10  that Plaintiff did not lose any weight since the date of the alleged onset of her disability, and

11  there was no evidence of diffuse atrophy in Plaintiff's medical records.  TR 899.

12          Consequently, the Court rejects Plaintiff's argument that the ALJ improperly

13  discounted her testimony.  The ALJ gave clear and convincing reasons for discounting

14  portions of her testimony regarding the severity of her pain and breathing difficulties, and

15  those reasons were supported by substantial evidence.

16      **D.      Consideration of Treating Physician Opinion in Step 4 Analysis**

17          "The ALJ is responsible for resolving conflicts in the medical record."  *Carmickle v.*

18  *Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008.)  Where an opinion is contradicted,

19  the ALJ may reject it for "specific and legitimate reasons that are supported by substantial

20  evidence in the record."  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

21  Plaintiff argues that the ALJ improperly rejected the opinion of Plaintiff's treating physician

22  Dr. Parkin.  However, a treating physician's opinion can be discounted based on the results

23  and findings of an independent consultative examination.  *Batson*, 359 F.3d at 1194–95.  The

24  ALJ reasonably could find that the opinions of Plaintiff's other examining and treating

25  physicians, such as Dr. Spratling, Dr. Stagg, Dr. Palmer, and Dr. Young, that Plaintiff had

26  few restrictions that would limit her residual functional capacity were more credible than the

27  opinion of Dr. Parkin.

28

1        While it might be improper to reject a treating physician's opinion solely on the basis

2   of a conflicting consultative examination, it can be rejected when considering the record as

3   a whole.  *Lester*, 81 F.3d at 830.  The ALJ compared the records and reports prepared by

4   various treating and consulting physicians, and concluded that the evidence, as a whole,

5   supported a finding that Plaintiff had the ability to perform light work, and that the

6   pulmonary evidence showed that Plaintiff's condition responded well to medication.  In fact,

7   in several of the records, Plaintiff informed the physician that her condition was improving.

8        Additionally, inconsistencies and ambiguities within a treating physicians' own

9   opinion or record can be a specific and legitimate reason for rejecting the opinion.  *Matney*,

10  981 F.2d at 1020.  In giving less weight to Dr. Parkin's opinion, the ALJ relied on the

11  inconsistencies in Dr. Parkin's own records.  The ALJ cites "oddities in Dr. Parkin's

12  assessments," which the ALJ determined lessen the credibility of the records and reflect an

13  inattention to the forms Dr. Parkin was completing.  TR 900–01.  The Court's review of the

14  records reveals that at times Dr. Parkin noted Plaintiff's quality of life was improving with

15  treatment, and at other times noted there was no improvement.

16       Accordingly, in light of the medical record as a whole, the ALJ did not err by

17  discounting Dr. Parkin's opinion.

18       **E.    Consideration of Third Party Report in Step 4 Analysis**

19       Plaintiff's daughter submitted a third party report for the ALJ's consideration, which

20  indicated that her mother suffers breathing difficulties, emotional problems and an inability

21  to work.  TR 145–150.  The third party report stated that Plaintiff is sometimes only "okay"

22  for two to three days per month.  TR 149.  Plaintiff argues that the ALJ erred in failing to

23  explicitly discuss the third party report.  Although the ALJ should have referenced the lay

24  witness testimony, the failure to discuss it was harmless, because no reasonable ALJ would

25  have reached a different result based on that testimony.  *Stout v. Soc. Sec. Admin.*, 454 F.3d

26  105, 1056 (9th Cir. 2006) ("[W]here the ALJ's error lies in a failure to properly discuss

27  competent lay testimony favorable to the claimant, a reviewing court cannot consider the

28

1   error harmless unless it can confidently conclude that no reasonable ALJ, when fully

2   crediting the testimony, could have reached a different disability determination.").

3       Plaintiff argues that disregarding the third party report violates the Social Security

4   regulations.  *See Smolen*, 80 F.3d at 1288.  The Social Security regulations provide that in

5   addition to medical sources, the ALJ may use evidence from other sources, including non-

6   medical sources (*e.g.*, relatives), to show the severity of the claimant's impairments.  20

7   C.F.R. §§ 404.1513(d)(4), 404.1529(a).  Applicable Social Security Rulings require the ALJ

8   to consider lay witness testimony in certain types of case, such as cases in which a claimant

9   alleges pain or other symptoms that are "not supported by objective medical evidence in the

10  file."  *Smolen*, 80 F.3d at 1288 (quoting Soc. Sec. Ruling 88-13, 1988 WL 236011, at *2).

11  If an ALJ rejects lay witness testimony, then the ALJ must provide germane reasons for

12  doing so.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

13      The Court finds the ALJ's failure to discuss the third party report in its decision was

14  harmless error.  Plaintiff's alleged disability is based in part on pain and fatigue.  However,

15  her medical records are well-detailed and provide adequate documentation of Plaintiff's

16  symptoms and impairments.  *Contra Smolen*, 80 F.3d at 1288 ("Here, Smolen's alleged

17  disability is based on fatigue and pain.  Her medical records are sparse and do not provide

18  adequate documentation of those symptoms.").

19      Further, in its decision denying Social Security benefits, the ALJ evaluated Plaintiff's

20  subjective complaints in light of the objective medical evidence.  The third party report is

21  largely duplicative of Plaintiff's own testimony, which the ALJ discussed at length in its

22  decision.  *E.g.*, *compare* TR 899 [ALJ's Decision] ("The record reveals that a considerable

23  amount of time is spent watching television and/or reading.") *with* TR 147 [Third Party

24  Report] ("Number of hours per day spent watching TV – 12.").  Because the impairments and

25  symptoms attested to by Plaintiff's daughter are discussed in the ALJ's decision, the ALJ met

26  the goal of the Social Security regulations concerning lay witness testimony by discussing

27  the impairments and symptoms attested to by the lay witness.  Contrary to Plaintiff's

28  allegation, the Court does not find the ALJ "rejected" the third party report.  Accordingly,

1   the Court finds the ALJ's failure to discuss the third party report in its decision is harmless

2   error.

3   **VII.    CONCLUSION**

4          In conclusion, the Court finds that the ALJ did not commit legal error by considering

5   certain impairments as non-severe, discrediting Dr. Parkin's opinion, as well as Plaintiff's

6   subjective pain testimony, and not specifically discussing its consideration of the third party

7   report or its evaluation of the SSA's Listing of Impairments.

8          For the reasons stated above,

9          **IT IS ORDERED** that the decision of the ALJ is affirmed and the Clerk of the Court

10  shall enter judgment accordingly (said judgment shall serve as the mandate in this case).

11         DATED this 3rd day of February, 2011.

12

13

14                                      _____
                                              James A. Teilborg
15                                         United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28